WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

JILL T. HOLDER,                    )
                                   )
        Plaintiff,                 )
                                   )      No. CIV 05-3521 PHX RCB
            vs.                    )
                                   )          O R D E R
LINDA S. MCMAHON,                  )
Acting Commissioner of Social      )
Security                           )
                                   )
        Defendant.                 )
_____    )

On November 2, 2005, Plaintiff Jill T. Holder filed the
above-entitled action pursuant to 42 U.S.C. § 405(g) for judicial
review of a final decision of the Commissioner of Social Security
(the "Commissioner") denying her application for disability
insurance benefits under Title II of the Social Security Act (the
"Act").  Compl. (doc. # 1).  Currently pending before the Court are
Plaintiff's motion for summary judgment (doc. # 25) and Defendant's
cross-motion for summary judgment (doc. # 30).  On February 21,
2007, Plaintiff filed a reply in support of her motion and in
opposition to Defendant's motion.  Reply (doc. # 39).  Having

1   carefully considered the arguments raised, the Court now rules.

2   **I.   BACKGROUND**

3       On June 25, 2002, Plaintiff filed an application for

4   disability insurance benefits under Title II of the Act,

5   complaining of fibromyalgia, a pituitary macro adenoma, recurrent

6   renal stones, and osteoperosis with a disability onset date of

7   September 25, 2001.  See Admin. R. (doc. # 6) ("Admin. R.") at 53.

8   After Plaintiff's application was denied initially and on

9   reconsideration, she sought review by an Administrative Law Judge

10  ("ALJ").  See id. at 17.

11      On May 19, 2004, a hearing was held before an ALJ where

12  testimony was heard from Plaintiff, as well as medical expert

13  Sami Nafoosi, M.D., vocational expert Stephen Berry, and

14  Plaintiff's son-in-law Peter Harrison.  Id. at 441-42.  In her

15  examination of Plaintiff, the ALJ developed testimony regarding

16  Plaintiff's educational and vocational background, family history,

17  and mental health.[1]  Id. at 444-41.  Dr. Nafoosi, a non-examining

18  medical expert, then asked Plaintiff questions concerning her

19  pituitary tumor, kidney stones, osteoperosis, and related

20  surgeries.  Id. at 452-54.  Based on that testimony, and his review

21  of the medical record, Dr. Nafoosi testified that Plaintiff's

22  medically determinable conditions did not individually or

23  collectively meet or equal a listed disability, and that there was

24  no objective evidence for a diagnosis of fibromyalgia.  Dr. Nafoosi

25  went on to opine that Plaintiff could perform jobs where she would

26  _____

27      [1]  For reasons unknown to the Court, the ALJ also elicited
    testimony regarding the current vocation of Plaintiff's daughter and
28  son-in-law with whom she lived at that time.  Admin. R. at 445-46.

have to lift 20 pounds occasionally; lift 10 pounds less frequently[2]; sit for 8 hours of an 8-hour day; walk or stand for 6 hours of an 8-hour day; complete an 8-hour day, 40-hour work week without requiring more than 3 breaks per day; and not miss more than 3 work days per month on account of her impairments or treatment.  Id. at 454-57.  Based on these limitations, the ALJ then posed a hypothetical question to the vocational expert who opined that Plaintiff, while unable to perform her past relevant work, could perform other light work.  See id. at 457-59.

Plaintiff's counsel then posed a second hypothetical question to the vocational expert based on limitations set forth in a medical opinion from Plaintiff's treating physician, Shawn Hamilton, M.D..[3]  Based on Dr. Hamilton's assessment, which was less optimistic than that of Dr. Nafoosi, the vocational expert testified that there would be no jobs available in the national economy for Plaintiff.  Id. at 459-60.  Before the hearing was concluded, further testimony was also heard from Plaintiff as well as her son in law, Peter Harrison.  See id. at 465-85.

---

[2]  It is difficult to understand why Plaintiff would be able to lift 10 pounds less frequently than she would be able to lift 20 pounds, as Dr. Nafoosi stated.  See Admin. R. at 456.  It seems that he had meant to say that Plaintiff could lift 10 pounds frequently, not "less frequently," and that is how his testimony was construed and treated at the hearing by the ALJ and Plaintiff's counsel.  See id. at 458, 460, 463.

[3]  Although the transcript reflects counsel as referring to an exhibit number corresponding to an opinion from Dr. Geier, which was largely consistent with the opinion of Dr. Hamilton, the Court notes that the limitations specified in counsel's hypothetical question directly correspond to those limitations identified three pages earlier in the record in Dr. Hamilton's opinion.  See Admin. R. at 459-60; compare id. at 423 (opinion of Dr. Hamilton) with id. at 426 (opinion of Dr. Geier).

On July 29, 2004, the ALJ issued a decision finding Plaintiff not disabled. Id. at 14-25.  The ALJ discredited Plaintiff's testimony as well as that of her son in law, and rejected the medical opinion evidence from Plaintiff's treating physicians, treating psychologist, and examining rheumatologist.  The ALJ did not discuss the medical opinion of Plaintiff's treating psychiatrist.  At the second step of the sequential evaluation process, the ALJ concluded that there was no credible evidence of fibromyalgia.  At the fifth step of the sequential evaluation process, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to engage in light work as a cleaner/housekeeper, inspector, or assembly line worker, and was therefore not disabled.  See id. at 17-25.

On September 27, 2004, Plaintiff filed a timely administrative appeal of the ALJ's decision with the Appeals Council of the Social Security Administration ("SSA") and submitted additional evidence for review.  Id. at 12-13.  The Appeals Council then issued its decision denying Plaintiff's request for review and adopting the ALJ's decision as the Commissioner's final decision.  Id. at 5-7; see 20 C.F.R. § 404.981; Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

On November 2, 2005, Plaintiff sought review in this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Compl. (doc. # 1).  Cross-motions for summary judgment have been filed and fully briefed.  Mot. (doc. # 25); Mot. (doc. # 30); Reply (doc. # 39).

**II.   STANDARDS OF REVIEW**

**A. Fed. R. Civ. P. 56**

Summary judgment is appropriate "when there is no genuine

issue of material fact" such that "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  In determining whether to grant summary judgment, a district court must view the underlying facts and the inferences to be drawn from those facts in the light most favorable to the nonmoving party.  See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

If a party will bear the burden of proof at trial as to an element essential to its claim, and fails to adduce evidence establishing a genuine issue of material fact with respect to the existence of that element, then summary judgment is appropriate.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Not every factual dispute is capable of defeating a properly supported motion for summary judgment.  Rather, the party opposing the motion must show that there is a genuine issue of material fact.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A factual dispute is genuine if the evidence is such that a rational trier of fact could resolve the dispute in favor of the nonmoving party.  Id. at 248.  A fact is material if determination of the issue might affect the outcome of the case under the governing substantive law.  Id.  Thus, a party opposing a motion for summary judgment cannot rest upon bare allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue for trial.  See id. at 250.  If the nonmoving party's evidence is merely colorable or not significantly probative, a court may grant summary judgment.  See id. at 249; see also Cal. Architectural Build. Prods., Inc. v. Franciscan Ceramics, 818 F.2d 1466, 1468 (9th Cir. 1987).

Finally, the fact that both parties have moved for summary

1  judgment does not alter these standards.  "It is well settled that

2  a court's duty to ascertain whether facts remain in contention is

3  not obviated by cross motions for summary judgment."  Eby v. Reb

4  Realty, Inc., 495 F.2d 646, 649 (9th Cir. 1974).

5  **B. 42 U.S.C. § 405(g)**

6      The Commissioner's denial of benefits is subject to judicial

7  review pursuant to 42 U.S.C. § 405(g).  The decision of the

8  Commissioner must be affirmed if it is supported by

9  substantial evidence and the Commissioner applied the correct legal

10  standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.

11  2005); Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003);

12  Tackett, 180 F.3d at 1097; Reddick v. Chater, 157 F.3d 715, 720

13  (9th Cir. 1998).  Factual determinations by the Commissioner,

14  acting through an ALJ, must be affirmed if supported by substantial

15  evidence.  See Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir.

16  2003); Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).

17      Substantial evidence is "such relevant evidence as a

18  reasonable mind might accept as adequate to support a conclusion."

19  Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is more than a

20  "mere scintilla," but less than a preponderance.  Richardson, 402

21  U.S. at 401 (1971) (internal quotations omitted); Connett v.

22  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003); Tackett, 180 F.3d at

23  1098; Reddick, 157 F.3d at 720; Sorenson v. Weinberger, 514 F.2d

24  1112, 1119 n.10 (9th Cir. 1975).

25      In reviewing the Commissioner's decision, the district court

26  must "consider the evidence as a whole, weighing both the evidence

27  that supports and the evidence that detracts from the

28  Commissioner's conclusion."  Smolen v. Chater, 80 F.3d 1273, 1279

1    (9th Cir. 1996).  If the evidence can reasonably support either

2    affirming or reversing the Commissioner's conclusion, the district

3    court may not substitute its judgment for that of the Commissioner

4    and must affirm.  See McCartey v. Massanari, 298 F.3d 1072, 1075

5    (9th Cir. 2002); Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at

6    720; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

7        Finally, "[a] decision of the ALJ will not be reversed for

8    errors that are harmless." Stout v. Comm'r, SSA, 454 F.3d 1050,

9    1054 (9th Cir. 2006) (citation omitted); accord Burch v. Barnhart,

10   400 F.3d 676, 679 (9th Cir. 2005); Curry v. Sullivan, 925 F.2d

11   1127, 1131 (9th Cir. 1991).  Thus, errors that are inconsequential

12   to the ALJ's ultimate determination as to disability are not

13   reversible.  Stout, 454 F.3d at 1055.  However, the error of

14   silently disregarding testimony about how an impairment limits a

15   claimant's ability to work has never been held harmless.  See id.

16   at 1055-56.

17   **III. DISCUSSION**

18       A person is considered disabled under the Act when he or she

19   becomes unable "to engage in any substantial gainful activity by

20   reason of any medically determinable physical or mental impairment

21   . . . which has lasted or can be expected to last for a continuous

22   period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).

23   In an administrative proceeding to determine eligibility for

24   disability insurance benefits, the Commissioner conducts a

25   five-step sequential evaluation process to determine whether a

26   claimant is disabled within the meaning of the Act.  See 20 C.F.R.

27   § 404.1520(b)-(f).  If at any of those five steps the Commissioner

28   can find the claimant disabled or not, the inquiry ends.  20 C.F.R.

§ 404.1520(a).

In this case, Plaintiff's diagnosis of fibromyalgia was found not to constitute a "severe medically determinable physical . . . impairment" at the second stage of the sequential evaluation process, 20 C.F.R. § 404.1520(a)(4)(ii), Admin. R. at 20, 24, and, as a result, Plaintiff was found "not disabled" at the fifth stage of the sequential evaluation process when the ALJ determined that Plaintiff retains the RFC to engage in light work as a cleaner/housekeeper, inspector, or assembly line worker, Admin. R. at 24, 20 C.F.R. § 404.1520(g).  Plaintiff's foremost objection to the finding of non-disability is that the ALJ erred by not considering her diagnosis of fibromyalgia to be a severe medically determinable impairment, thereby failing to incorporate that limitation in her hypothetical question to the vocational expert or consider the diagnosis in her RFC determination.  Mot. (doc. # 25) at 2-7, 13.  This argument is best evaluated in the context of Plaintiff's broader claim that the ALJ did not set forth adequate reasons for ignoring or rejecting the medical opinions of her treating and examining sources.

To summarize, Plaintiff complains that the ALJ erred by (1) either silently ignoring or not according sufficient weight to the medical opinions of her treating and examining sources, id. at 2-5, 8-11, (2) not according sufficient weight to her subjective testimony regarding her physical and mental limitations, id. at 11-12, (3) not according sufficient weight to the lay testimony of her son-in-law, Peter Harrison, id. at 13, (4) not posing a complete hypothetical question to the vocational expert, id., and (5) not considering all of her limitations in determining her RFC, id. at

5-8.   The Court considers each argument in turn.

**A. Medical Opinions of Treating Sources**

Under the Social Security Regulations (the "Regulations"), evidence of a claimant's impairment may be provided by either an "acceptable medical source" or "other source."  20 C.F.R. §§ 404.1513(a), 404.1513(d).  Only an acceptable medical source can provide medical opinions.  20 C.F.R. § 404.1527(a)(2).

Weight is accorded differently to medical opinions depending on whether the source providing the opinion is the claimant's treating source, examining  source, or a source who neither examined nor treated the claimant ("non-examining source"). Generally, an uncontradicted opinion from a treating source must be given controlling weight, 20 C.F.R. § 404.1527(d)(2), and greater weight must also be given to the opinion of an examining source than that of a non-examining source, Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990).  The uncontradicted opinion and ultimate conclusions of a treating or examining source may not be rejected unless the ALJ provides clear and convincing reasons supported by substantial evidence in the record for doing so. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  If controverted by other medical evidence, the ALJ may disregard the opinion only by setting forth specific and legitimate reasons supported by substantial evidence in the record for doing so.  See 20 C.F.R. § 416.927(f)(2)(ii); Andrews, 53 F.3d at 1043.

In the present case, Plaintiff complains that the ALJ did not accord sufficient weight to the medical opinions of (1) her examining rheumatologist, Kelly Portnoff, M.D., Mot. (doc. # 25) at

2-5, (2) her treating psychiatrist, Chona Bader Green, M.D., id. at 8-9, (3) her treating psychologist, Karen Rabin, Ph.D., id. at 10, and (4) her treating physicians, Elizabeth Traynor, M.D., Shawn Hamilton, M.D., and John Geier, M.D., id. at 9-11.

**1. Opinion of Dr. Portnoff, Examining Rheumatologist**

Plaintiff's foremost objection to the Commissioner's finding of non-disability is that the ALJ erred by not considering her diagnosis of fibromyalgia to be a severe medically determinable physical impairment.  Mot. (doc. # 25) at 2-5.  On referral from her treating physician, Plaintiff was examined by Dr. Portnoff, a rheumatologist, and diagnosed with fibromyalgia based on a physical examination revealing 18 out of 18 myofascial tender points. Admin. R. at 388-89.  "Rheumatology is the relevant medical specialty for fibromyalgia," Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004), and the SSA has long recognized the tender-point criteria established by the American College of Rheumatology as establishing a medically determinable impairment of fibromyalgia.  See 64 Fed. Reg. 23380, 23382 n.3 (Apr. 30, 1999); see also SSA Memorandum, Fibromyalgia, Chronic Fatigue Syndrome, and Objective Medical Evidence Requirements for Disability Adjudication, at 5 (May 11, 1998) (explaining that the signs for fibromyalgia "are primarily the tender points").  Plaintiff thus argues that the ALJ erred by not according sufficient weight to Dr. Portnoff's opinion, and, as a result, finding that her diagnosis of fibromyalgia did not constitute a severe medically determinable physical impairment.  Mot. (doc. # 25) at 2-5.

Defendant contends that Plaintiff failed to substantiate any impairment or functional limitation from her fibromyalgia, and

1   argues that the ALJ appropriately rejected Dr. Portnoff's opinion

2   by setting forth specific and legitimate reasons supported by

3   substantial evidence in the record.  Mot. (doc. # 30) at 4-6.  The

4   Court disagrees.

5        The ALJ's decision does not set forth legally sufficient

6   reasons for rejecting Dr. Portnoff's opinion.  In her rheumatologic

7   evaluation, Dr. Portnoff diagnosed Plaintiff with probable

8   fibromyalgia based on a physical examination that revealed 18 out

9   of 18 myofascial tender points.  Admin. R. at 388-89.  The ALJ

10  summarily rejected this diagnosis, noting only that "there ha[d]

11  been no mention or documentation of such tender points prior to

12  [Dr. Portnoff's] evaluation, nor ha[d] there been any subsequent

13  corroborating findings."  Id. at 20.  Stripped of its innuendo,

14  this statement says nothing more than the fact that Dr. Portnoff's

15  fibromyalgia diagnosis, while not corroborated by subsequent

16  findings, is an uncontradicted medical opinion from an examining

17  physician-- one that should have been given controlling weight by

18  the ALJ.  See Widmark v. Barnhart, 454 F.3d 1063, 1065 (9th Cir.

19  2006) ("[T]he mere absence of a corroborating opinion cannot in

20  itself constitute a conflict among the medical opinions."); see

21  also Baxter, 923 F.2d at 1396; Embrey, 849 F.2d at 422.  Instead,

22  the ALJ chose to ignore Dr. Portnoff's opinion simply because there

23  was not more evidence like it.  The only other possible

24  justification offered by the ALJ is the conclusory assertion that

25  "Dr. Portnoff's assessment is inconsistent with the substantial

26  evidence of record."  Admin. R. at 20.  None of this "substantial

27  evidence" is mentioned or cited in that discussion, and, given that

28  Dr. Portnoff was the only rheumatologist to examine Plaintiff for

1  fibromyalgia, the Court questions whether any such evidence exists.

2  See id.

3      Defendant argues that the ALJ's rejection of Dr. Portnoff's

4  opinion could have been validly based on the allegedly conflicting

5  opinion of the Commission's non-examining medical expert, Sami

6  Nafoosi, M.D., who indicated finding "no objective basis for a

7  diagnosis of fibromyalgia."  Mot. (doc. # 30) at 4-8; Admin. R. at

8  21, 452-54, 463-64.  This argument fails, because the ALJ did not

9  refer to Dr. Nafoosi's opinion as a basis for rejecting Dr.

10 Portnoff's opinion.  Id. at 20.  Even if the ALJ had been so

11 explicit in her analysis, Dr. Nafoosi's opinion does not provide a

12 sufficient basis to disregard Dr. Portnoff's fibromyalgia

13 diagnosis.  As a rheumatologist, Dr. Portnoff's opinion was

14 entitled to "greater weight than those of the other physicians

15 because it [wa]s an 'opinion of a specialist about medical issues

16 related to his or her area of specialty.'"  Benecke, 379 F.3d at

17 594 n.4 (quoting 20 C.F.R. § 404.1527(d)(5)).  Dr. Portnoff's

18 opinion was also entitled to greater weight by virtue of the fact

19 that she, unlike Dr. Nafoosi, was an examining source.  See Baxter,

20 923 F.2d at 1396; Embrey, 849 F.2d at 422.  In any event, Dr.

21 Nafoosi's observation that there was "no objective basis for a

22 diagnosis of fibromyalgia," Admin. R. at 21, is meaningless, as it

23 is well known that the "cause or causes [of fibromyalgia] are

24 unknown, there is no cure, and . . . its symptoms are entirely

25 subjective."  See Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.

26 1996) (Posner, C.J.).  Therefore, without having conducted a

27 physical examination for tender points or at least considered the

28 evidence of such findings by Dr. Portnoff, Dr. Nafoosi's conclusion

- 12 -

that there is "no objective basis for a diagnosis of fibromyalgia" is at odds with the SSA's own standards for determining the presence of fibromyalgia.  <u>See</u> 64 Fed. Reg. 23380, 23382 n.3 (Apr. 30, 1999); <u>see also</u> SSA Memorandum, <u>Fibromyalgia, Chronic Fatigue Syndrome, and Objective Medical Evidence Requirements for Disability Adjudication</u>, at 5 (May 11, 1998).

In sum, neither the reasons expressly stated by the ALJ nor the opinion expressed by Dr. Nafoosi offers any legitimate basis to dispute the diagnosis by Dr. Portnoff-- a specialist whose examination of Plaintiff revealed findings recognized by the SSA as sufficient proof of fibromyalgia.  While the ALJ has made her general skepticism with regard to fibromyalgia and Plaintiff's claims known, "[s]heer disbelief is no substitute for substantial evidence."  <u>See</u> <u>Benecke</u>, 379 F.3d at 594.

**2. Opinion of Dr. Green, Treating Psychiatrist**

As evidence of her impairments in the case at hand, Plaintiff provided the SSA with medical records from her treating psychiatrist, Chona Bader Green, M.D., Admin. R. at 232-304, but the ALJ did not discuss this evidence in her decision, <u>Id.</u> at 17-25.  Plaintiff thus argues that the ALJ erred by completely ignoring Dr. Green's opinion.  Mot. (doc. # 25) at 8-9.

Defendant claims that the ALJ's failure to consider Dr. Green's opinion was harmless error, relying on the ALJ's consideration of an opinion from Plaintiff's psychologist, Karen Rabin, Ph.D., who worked at the same practice as Dr. Green.  Mot. (doc. # 30) at 10-11.  Defendant believes that the ALJ's rejection of Dr. Rabin's opinion for lack of "objective medical evidence" applies by proxy to the silently disregarded opinion of Dr. Green.

1  This is Defendant's theory of harmless error.   Id.

2       The Regulations state that "[r]egardless of its source, [the
3  SSA] will evaluate every medical opinion [it] receive[s]."   20
4  C.F.R. § 404.1527(d).   As a licensed treating physician, Dr. Green
5  was a source whose opinion should have been discussed-- even
6  accorded controlling weight-- yet the ALJ ignored Dr. Green's
7  findings without comment, let alone specific and legitimate reasons
8  supported by substantial evidence in the record for discrediting
9  that evidence.   In view of the numerous disability certifications
10 furnished by Dr. Green to the Employment Development Department of
11 the State of California[4] and, on one occasion, to a jury
12 commissioner, see Admin. R. at 253, 262, 265, 269, 291, the Court
13 cannot find that the ALJ's error in failing to consider her opinion
14 was harmless.   See Stout, 454 F.3d at 1055.   Because the error of
15 silently disregarding lay testimony about how an impairment limits
16 a claimant's ability to work has never been held harmless, see id.
17 at 1055-56, it is difficult to countenance a similar excuse for the
18 error of silently disregarding a treating physician's opinion.

19      Defendant's post hoc rationale suggesting that the ALJ
20 conflated the opinions of Drs. Green and Rabin based on the
21 interdisciplinary nature of their practice, and is thereby excused
22 for having failed to discuss Dr. Green's opinion, is of dubious
23 merit.   Not only does the decision fail to mention any such
24 rationale, see Admin. R. at 17-25, but the fact that the ALJ

25

26 ─────────────────

27      [4]  The Employment Development Department administers the state
   disability insurance program for California workers.  Employment Dev.
28 Dep't, Disability Insurance, at http://www.edd.ca.gov/eddhome.htm
   (last visited Mar. 2, 2007).

1  rejected Dr. Rabin's opinion based on her perception that it was

2  unsupported by "objective medical findings," id. at 20, belies the

3  more likely truth that the ALJ was unaware of, or deliberately

4  ignored, the interdisciplinary nature of the practice.

5      **3. Opinion of Dr. Rabin, Treating Psychologist**

6      The Court finds that the ALJ has not set forth specific and

7  legitimate reasons supported by substantial evidence in the record

8  for rejecting the opinion of Plaintiff's treating psychologist, Dr.

9  Rabin.  After citing a four-page opinion from Dr. Rabin, the ALJ

10 concluded that the psychologist's assessment "is not fully

11 credible." Id. at 20.  In support of this position, the ALJ relied

12 on a prior mental examination that found no significant

13 limitations, and her general impression that Dr. Rabin relied

14 solely on Plaintiff's subjective complaints rather than an actual

15 mental status examination.  See id.  There is no citation to the

16 record for these assertions, making it difficult to ascertain the

17 validity of the decision.  Id.  Moreover, the ALJ's failure to

18 consider the mental status examinations and disability opinions of

19 Plaintiff's treating psychiatrist, Dr. Green, with whom Dr. Rabin

20 practiced, see Part III.A.2, supra, diminishes the credibility of

21 her rationale that Dr. Rabin's opinion lacked a medical basis.  The

22 record contains over seventy pages of treatment notes from Drs.

23 Green and Rabin documenting Plaintiff's treatment as far back as

24 January 11, 2001, id. at 232-304, as well as several disability

25 opinions from Dr. Green, id. at 253, 262, 265, 269, 291, yet none

26 of this is discussed in the decision, id. at 17-25.  It is apparent

27 that the ALJ's failure to consider Dr. Green's opinion flawed her

28 analysis of Dr. Rabin's opinion, and the reasons provided in the

1   decision for rejecting Dr. Rabin's opinion do not cure this error.

2       **4. Opinion of Drs. Traynor, Hamilton, and Geier**

3       Plaintiff also provided the SSA with medical records from her

4   treating physicians, Elizabeth Traynor, M.D., Shawn Hamilton, M.D.,

5   and John Geier, M.D.. Id. at 213-14, 217-91.  Licensed physicians

6   are acceptable medical sources.  20 C.F.R. § 404.1513(a)(1)-(2).

7   Plaintiff thus argues that the ALJ should have either given

8   controlling weight to the opinions of her treating sources or

9   explained in the decision her reasons for not doing so.  Mot. (doc.

10  # 10) at 9-11.  Defendant maintains that the ALJ appropriately

11  rejected the treating physicians' opinions by setting forth

12  specific and legitimate reasons supported by substantial evidence

13  in the record revealed from a "thorough review of all relevant

14  medical evidence."  Mot. (doc. # 30) at 11-15.

15      With respect to the ALJ's rejection of Dr. Traynor's opinion,

16  the Court finds that the ALJ did not set forth legally sufficient

17  reasons.  Dr. Traynor opined that Plaintiff is "disabled from

18  regular work" and "bedridden" due to pain in her chest and spine,

19  headaches for 7-10 days per month, pituitary tumor, kidney stones,

20  high blood pressure, and insomnia.  Admin. R. at 402.  The ALJ,

21  without citing to any record evidence, stated that the medical

22  evidence did not establish an objective basis for any problems

23  arising from Plaintiff's pituitary tumor, kidney stones, or blood

24  pressure.  Id. at 21.  Counsel has with great alacrity scoured the

25  record and the decision to provide the Court with citations to the

26  specific portions of the record to which the ALJ may have tacitly

27  intended to refer.  Mot. (doc. # 30) at 15 (discussing opinions of

28  Drs. Gruenefelder and Geier).  While the effort is admirable, it

1   does not save the ALJ's decision from its fatal lack of specific

2   reasons for discrediting Dr. Traynor's opinion.  The problem is

3   best illustrated by the inconsistency of the post hoc rationale

4   offered with respect to the issue of Plaintiff's blood pressure.

5   Counsel suggests that the ALJ may have validly relied on Dr.

6   Geier's opinion that Plaintiff's endocrine system functioned

7   adequately.  Mot. (doc. # 30) at 15.  Considering that the ALJ

8   expressly rejected Dr. Geier's assessments as "simply not

9   credible," it is difficult to accept this justification.  Admin. R.

10  at 21.  Given the ease with which the ALJ's oblique reasons for

11  rejecting Dr. Traynor's testimony can lead Defendant's counsel to

12  such incompatible results, it is clear that the decision does not

13  adequately set forth specific and legitimate reasons for rejecting

14  Dr. Traynor's testimony.  Furthermore, the decision's reference to

15  the lack of objective medical findings to support Dr. Traynor's

16  findings of chest and spinal pain, see id., may have been

17  misinformed by the ALJ's failure to properly consider Plaintiff's

18  fibromyalgia diagnosis, as explained in Part III.A.1, supra.[5]

19      With respect to the opinions of Drs. Hamilton and Geier, the

20  Court finds that the reasons set forth in the decision are

21  insufficient to support the ALJ's conclusion that the doctors'

22  "assessments are simply not credible."  See Admin. R. at 21.  The

23

24      [5]  The Court also notes that the ALJ attempted to refute Dr.
25  Traynor's opinion as to Plaintiff's bedridden condition by injecting
    her personal opinion that Plaintiff's "status is due to a lifestyle
26  choice and not due to any medical condition."  Id. (emphasis added).
    Even if sufficient reasons had been set forth to reject Dr. Traynor's
27  opinion, the Court questions the usefulness of expressions such as
    this that add nothing to the legal analysis and tend to undermine the
28  Commissioner's appearance of impartiality.

1  ALJ raises one factual argument-- that the Plaintiff "consistently

2  has full motion in all areas without significant neurological

3  findings."  Id.  Again, there is no citation to the record for this

4  assertion.  Id.  Moreover, both doctors based their assessments of

5  Plaintiffs' limitations on her diagnosis of fibromyalgia, which the

6  ALJ failed to properly consider.  See id. at 423-24, 427.

7       In reaching a final decision on disability, it is the ALJ's

8  responsibility to discuss the relevant evidence and provide

9  sufficient reasons explaining the weight given to that evidence.

10  Neither has happened here, and the Court will not accept counsel's

11  post hoc rationalizations or sift through the record for evidence

12  to substantiate assertions that the ALJ failed to support by proper

13  citation.  For all of the foregoing reasons, the Court finds that

14  the ALJ did not set forth legally sufficient reasons for her

15  decision to discredit the opinions of Drs. Portnoff, Green, Rabin,

16  Traynor, Hamilton, and Geier.

17       **B. Testimony of Plaintiff**

18       Plaintiff also argues that the ALJ did not provide legally

19  sufficient reasons for rejecting her hearing testimony regarding

20  her limitations.  Mot. (doc. # 25) at 11-12.

21       A claimant's pain testimony must be considered in the

22  disability determination process "so long as the pain is associated

23  with a clinically demonstrated impairment."  Howard v. Heckler, 782

24  F.2d 1484, 1488 n.4 (9th Cir. 1986).  The ALJ cannot discount a

25  claimant's subjective complaints of excess pain without making

26  specific findings regarding the claimant's credibility.  Morgan v.

27  Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999);

28  Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1996).  These

findings must be based on clear and convincing reasons that are

supported by substantial evidence in the record as a whole.

Johnson, 60 F.3d at 1433.  "Clear and convincing" reasons to reject

a claimant's credibility may include internal inconsistencies in

the claimant's testimony, Light v. Soc. Sec. Admin., 119 F.3d 789,

792 (9th Cir. 1997), "the claimant's reputation for lying, prior

inconsistent statements concerning the symptoms, and other

testimony by the claimant that appears less than candid;

unexplained or inadequately explained failure to seek treatment or

to follow a prescribed course of treatment; and the claimant's

daily activities," Smolen, 80 F.3d at 1284.  In evaluating the

claimant's credibility, the ALJ must also consider the "location,

duration, frequency, and intensity of the [claimant's] pain or

other symptoms," any precipitating and aggravating factors, and the

"type, dosage, effectiveness, and side effects of any medication

the [claimant] takes or has taken to alleviate pain or other

symptoms."  SSR 96-7p.[6]  The ALJ cannot, however, discredit a

claimant's pain testimony based solely on a lack of corroborating

medical evidence.  Bunnel v. Sullivan, 947 F.2d 341, 345 (9th Cir.

1991) (en banc); Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir.

1986) ("'Excess pain' is, by definition, pain that is unsupported

by objective medical findings."); 20 C.F.R. §§ 404.1529, 416.929;

SSR 88-13; SSR 96-7p.

     A reviewing court may not speculate as to the basis for the

---

     [6]   Because Social Security Ruling 96-7p is a reasonable
interpretation of 20 C.F.R. §§ 404.1529 and 416.929 to which this
Court owes deference, see Chevron U.S.A., Inc. v. Natural Res. Def.
Counsel, Inc., 467 U.S. 837, 842-43 (1984), the Commissioner's
interpretive commentary is controlling.

1   ALJ's credibility determination.  See Bunnel, 947 F.2d at 346 (en

2   banc) (citation omitted).  "The ALJ must state specifically which

3   symptom testimony is not credible and what facts in the record lead

4   to that conclusion."  Smolen, 80 F.3d at 1284 (citation omitted);

5   see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)

6   ("It's not sufficient for the ALJ to make only general findings; he

7   must state which pain testimony is not credible and what evidence

8   suggests the complaints are not credible.").

9        In this case, the ALJ held that Plaintiff "ha[d] not

10  established a medically determinable impairment which would

11  reasonably be expected to produce [the] limitations" of which she

12  complained.  Admin. R. at 21.  The ALJ relied on the lack of

13  "credible evidence of fibromyalgia," id., but, as explained above,

14  the record was replete with evidence that was rejected or ignored

15  without adequate legal justification.  Accordingly, the Court

16  rejects the ALJ's suggestion that Plaintiff's pain is not

17  associated with a clinically demonstrated impairment, and will

18  instead look to the other reasons provided by the ALJ for

19  discrediting Plaintiff's testimony.

20       Having carefully reviewed the decision and the record in this

21  case, including Plaintiff's hearing testimony, the Court is not

22  clearly convinced by the ALJ's reasons for rejecting Plaintiff's

23  pain testimony.  The ALJ relied principally on the lack of medical

24  evidence linking Plaintiff's impairments to her pituitary and renal

25  problems, and notes that "[h]er hypertension is well controlled"

26  and that she has a "full range of motion on physical exams without

27  neurological deficits."  Admin. R. at 21.  The ALJ did not cite to

28  the record for any of these assertions, id., and, in any event, the

1  ALJ cannot discredit Plaintiff's pain testimony based solely on a

2  lack of corroborating medical evidence.  <u>See</u> <u>Bunnel</u>, 947 F.2d at

3  345 (en banc); <u>Cotton</u>, 799 F.2d at 1407; 20 C.F.R. § 404.1529; SSR

4  88-13; SSR 96-7p.  Thus, the legitimacy of the ALJ's decision lies

5  in the balance of the evidence supporting the other reasons for her

6  credibility determination.  The Court finds those other reasons

7  neither clear nor convincing.

8      The ALJ faulted Plaintiff for not having received more

9  extensive treatment and therapy, and for having failed to regularly

10  consume "strong medication" to overcome her limitations.  Admin. R.

11  at 21-22.  These unsupported assertions are materially inconsistent

12  with the record.  Plaintiff has taken a number of medications,

13  including the narcotic analgesics Vicodin and Fiorinol.  <u>Id.</u> at

14  348, 386, 394, 433.  Given the well-known risk of physical and

15  psychological dependence associated with these potent substances,

16  the Court is disturbed by the ALJ's dangerous suggestion that

17  Plaintiff should have consumed even stronger medications and on a

18  more regular basis.[7]  Furthermore, in light of evidence that

19  Plaintiff lacked prescription drug coverage and money to undergo

20  extensive physical therapy, <u>see</u> <u>id.</u> at 389, 394, the Court does not

21  find that the ALJ's personal opinion on what may have constituted

22  more effective treatment presents a clear and convincing reason to

23  discredit Plaintiff's pain testimony.  <u>See</u> <u>Smolen</u>, 80 F.3d at 1284.

24

25      [7]  <u>See, e.g.</u>, Wikipedia, <u>Vicodin</u>, <u>at</u> http://en.wikipedia.org/
wiki/Vicodin#Addiction (last visited Mar. 12, 2007) (explaining the

26  addictive nature of the opiate derivative, hydrocodone, contained in
Vicodin); Wikipedia, <u>Fiorinal</u>, <u>at</u> http://en.wikipedia.org/wiki/

27  Fiorinol (last visited Mar. 12, 2007) (discussing the risk of
dependency associated with the barbiturate, butalbital, contained in

28  Fiorinal).

The ALJ also claimed that Plaintiff's hearing testimony was inconsistent, apparently because "[s]he first stated that her treatment was helpful, but later claimed it was not." Admin. R. at 22. The ALJ may have been referring to Plaintiff's account of her psychiatric and psychological treatment. See id. at 444-451. Plaintiff testified that she found her group therapy helpful in terms of allowing her to vent her frustrations before an empathetic audience, but indicated that her depression was worse overall after three years of treatment. Id. at 448-49. As Plaintiff explained, she went in and out of major depression. Id. at 449-50. Her testimony presents a completely plausible scenario of an individual suffering episodes of depression. The fact that Plaintiff was not fortunate enough to chart a positive linear path of recovery from her depression without any relapse does not reveal any inconsistency in her testimony as the ALJ insinuates.

The ALJ also discussed Plaintiff's daily activities of driving and shared housework such as cooking, citing a psychiatric consultative examination by a government medical expert conducted nearly two years prior to the decision, and impliedly suggests that these activities belie Plaintiff's claimed impairments. Id. at 22. The Court disagrees. Plaintiff's testimony made clear that she does not drive much and that her memory problems and lack of strength frequently prevent her from consistently performing these daily activities. Id. at 468-69. Her son-in-law testified that Plaintiff no longer does any of the cooking and that he would sometimes drive Plaintiff to her medical appointments. Id. at 477, 480. In any event, the ALJ's selective reading of the testimony regarding Plaintiff's daily activities does not detract from

1   Plaintiff's credibility regarding her limitations.  <u>See</u> <u>Reddick</u>,

2   157 F.3d at 722 ("[D]isability claimants should not be penalized

3   for attempting to lead normal lives in the face of their

4   limitations."); <u>see also</u> <u>Smolen</u>, 80 F.3d at 1284 n.7 ("The Social

5   Security Act does not require that claimants be utterly

6   incapacitated to be eligible for benefits . . . ."); <u>Cooper v.</u>

7   <u>Bowen</u>, 815 F.2d 557, 561 (9th Cir. 1987) (Disability claimants need

8   not "vegetate in a dark room" in order to be deemed eligible for

9   benefits).

10      In sum, the ALJ's reasons for rejecting Plaintiff's pain

11  testimony are not clear and convincing, and are not adequately

12  supported by the record.  The decision does not point toward any

13  evidence that Plaintiff magnified her symptoms, or cite to any

14  evidence in support of the ALJ's credibility determination.  The

15  ALJ was wrong to reject Plaintiff's pain testimony based on the

16  reasons provided in the decision.

17      **C. Lay Testimony of Plaintiff's Son-in-Law**

18      Plaintiff also argues that the ALJ improperly rejected the

19  testimony of her son-in-law, Peter Harrison, with whom she lived at

20  the time of her hearing.  Mot. (doc. # 25) at 13; Admin. R. at 476.

21  The ALJ rejected Mr. Harrison's testimony because, "while shedding

22  light on the character of the claimant, [it] offered little insight

23  into her actual medical condition."  Admin. R. at 22.  Plaintiff

24  objects to this explanation, contending that Mr. Harrison's

25  testimony was intended to provide insight into Plaintiff's

26  inability to function on a daily basis rather than directly explain

27  her medical condition.  Mot. (doc. # 25) at 13.  Defendant does not

28  address this point, maintaining only that "the ALJ provided

1  specific, persuasive reasons" to reject Mr. Harrison's testimony.
2  Mot. (doc. # 30) at 19.

3      Under the Regulations, Mr. Harrison's opinion is treated as
4  "other source" evidence under 20 C.F.R. § 404.1527(d).  Under Ninth
5  Circuit law, lay testimony such as that provided by Mr. Harrison
6  may only be rejected if the ALJ "expressly determines to disregard
7  such testimony and gives reasons germane to each witness for doing
8  so."  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

9      Having examined the hearing transcript, it is apparent to the
10 Court that the ALJ improperly recharacterized Mr. Harrison's
11 testimony, and also failed to provide sufficient reasons to reject
12 that testimony as recharacterized.  For example, the ALJ stated
13 that Mr. Harrison "testified that the claimant drives herself to
14 her doctors' appointments," Admin. R. at 22, but does not
15 acknowledge the fact that Mr. Harrison also drove Plaintiff to many
16 of those appointments, see id. at 477.  The ALJ apparently heard
17 Mr. Harrison as testifying that Plaintiff "ha[d] no apparent
18 difficulty . . . carrying her food/coffee up stairs [to her room],"
19 id. at 22, yet the transcript reveals testimony from Mr. Harrison
20 that Plaintiff would frequently drop such items as "cups, plates,
21 food, [and] coffee," id. at 484.  The only other aspect of Mr.
22 Harrison's testimony mentioned by the ALJ was the innocuous fact of
23 the "little dog that lives with [Plaintiff] in her room."  Id. at
24 22.  It is noteworthy that the ALJ commented on the keeping of this
25 animal as it apparently shed "light on the character of the
26 claimant," yet she declined to comment on Mr. Harrison's daily
27 observations of Plaintiff's depression, his account of how he would
28 do most of the shopping and cooking, and his lay opinion, based on

the limitations he saw, that he could not rely on Plaintiff to watch his child when she lived with him.  See id. at 476-84.  These omissions in the ALJ's summary of Mr. Harrison's testimony seem more to recharacterize it than analyze it.  Cf. Bergfeld v. Barnhart, 361 F. Supp. 2d 1102, 1115 (D. Ariz. 2005) ("Here, the ALJ did not simply weigh the evidence; he recharacterized it.").

The ALJ's assertion that the testimony of Mr. Harrison, a real estate broker, "offered little insight into [Plaintiff's] actual medical condition" rings hollow.  See Admin. R. at 22, 476. Individuals who are not acceptable medical sources, while testifying about other relevant considerations such as a claimant's daily activities, are rarely if ever going to provide specific insight into a claimant's medical condition.  That is why Ninth Circuit law requires the ALJ to "give[] reasons germane to each witness" when explaining the weight given to lay testimony.  See Lewis, 236 F.3d at 511.  For these reasons, the Court finds that the ALJ improperly rejected Mr. Harrison's testimony based on reasons not germane to his testimony.

**D. Hypothetical Question Posed to Vocational Expert**

Plaintiff contends that the ALJ also erred by posing an incomplete hypothetical question to the vocational expert who testified at her hearing by excluding the functional limitations resulting from her fibromyalgia.  Mot. (doc. # 25) at 13. Defendant contends that the ALJ's hypothetical question properly excluded limitations resulting from Plaintiff's fibromyalgia.  Mot. (doc. # 30) at 19-20.  In making this argument, Defendant relies on the validity of the ALJ's conclusion that Plaintiff did not demonstrate her fibromyalgia to be a severe medically determinable

impairment.    Id.

"In order for the testimony of a [vocational expert] to be considered reliable, the hypothetical posed must include all of the claimant's functional limitations, both physical and mental supported by the record." Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (internal quotations and citation omitted).  As explained in Parts III.A.1 and III.A.4, supra, the ALJ did not provide legally sufficient reasons for rejecting medical opinion evidence from Plaintiff's treating and examining sources which, if properly credited, would have proven significant functional limitations arising from her fibromyalgia.  The Court therefore concludes that the ALJ erred by asking the vocational expert an incomplete question that excluded those relevant limitations. Thomas, 278 F.3d at 956.

**E. Residual Functional Capacity Determination**

An RFC determination reflects a claimant's ability to work in spite of the physical and mental limitations arising from the claimant's impairments and related symptoms.  See 20 C.F.R. § 404.1545(a).  A claimant's RFC is determined based on all of the claimant's limitations and in light of all relevant evidence in the record.    Id.

Plaintiff challenges the ALJ's ultimate finding of "not disabled," arguing that the ALJ wrongly excluded evidence of her limitations in making her RFC determination at the fifth step of the sequential evaluation process.  Mot. (doc. # 25) at 5-8. Plaintiff's point is well taken.  The preceding discussion makes it abundantly clear that the ALJ improperly disregarded substantial credible evidence of Plaintiff's impairments and limitations

without providing legally sufficient explanations for those credibility determinations.  The Court will now consider the appropriate action to be taken on remand.

### F. Remand for Payment of Benefits

Plaintiff argues that further administrative proceedings are unnecessary, and that the matter should be remanded for immediate payment of benefits.  Mot. (doc. # 25) at 14 (citing Smolen, 80 F.3d at 1292).

In Smolen, the Ninth Circuit held that improperly discredited evidence may be credited as true and an immediate award of benefits directed when the following criteria are established:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d at 1292.  Even if the record contains evidence that the ALJ, if given a second chance, might use to articulate a sound basis to discredit the evidence, remand for determination and payment of benefits under Smolen is warranted.  Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000).  The court's discretionary power to remand for immediate payment of benefits under Smolen serves as a deterrent to "an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication" by encouraging more thoughtful analysis in the first instance.  See Benecke, 379 F.3d at 595.  If grounds exist to support the ALJ's credibility determination, "it is both reasonable and desirable to require the ALJ to articulate them in the original decision."

1  <u>Harman</u>, 211 F.3d at 1179 (internal quotations and citation

2  omitted).  Ultimately, the court may base its decision on whether

3  to remand for further proceedings on "the likely utility of such

4  proceedings."  See <u>id.</u> (citing <u>Lewin v. Schwieker</u>, 654 F.2d 631,

5  635 (9th Cir. 1981)).

6  As explained above, the ALJ did not provide legally sufficient

7  reasons for rejecting the testimony of Plaintiff or her son-in-law,

8  or any of the medical opinion evidence from Plaintiff's treating

9  and examining physicians, psychiatrist, and psychologist.  At the

10  hearing, Plaintiff's counsel elicited testimony from the vocational

11  expert by posing a hypothetical question that, unlike the one posed

12  by the ALJ, incorporated all of Plaintiff's functional limitations.

13  Admin. R. at 459-60.  Because the vocational expert has already

14  testified that there would be no jobs available in the national

15  economy for an individual with Plaintiff's functional limitations

16  as outlined by Dr. Hamilton, <u>see</u> <u>id.</u>, it is clear from the record

17  that the ALJ would be required to find Plaintiff disabled after

18  crediting the improperly discredited evidence.  See <u>Smolen</u>, 80 F.3d

19  at 1292.

20  Defendant does not point toward any outstanding issues that

21  must be resolved before a determination of benefits can be made.

22  <u>See</u> <u>id.</u>  Instead, Defendant claims that "Plaintiff has only

23  identified alleged factual errors by the ALJ," and, on that basis,

24  argues that the case should be "remand[ed] for further development

25  of the record rather than reversal for payment of benefits."  Mot.

26  (doc. # 30) at 21.  In support of this position, Defendant relies

27  solely on <u>Salvador v. Sullivan</u>, 917 F.2d 13, 15 (9th Cir. 1990),

28  where the Ninth Circuit exercised its discretion not to award

benefits due to the possible existence of evidence in the record "to which the ALJ can point to provide the requisite specific and legitimate reasons for disregarding [the opinion of the claimant's treating physician]."  However, more recent authority from the Ninth Circuit expressly states that remand for payment of benefits under Smolen is warranted even where the record may contain evidence that could support the ALJ's credibility determinations. See Harman, 211 F.3d at 1179.

Although the Court has the discretion to remand this matter for further administrative proceedings where the ALJ could make additional factual findings, the Court does not perceive any useful purpose for protracted administrative hearings here.  See Harman, 211 F.3d at 1179.  Defendant has not specified any outstanding issues under Smolen that would benefit from further factual development.  See Mot. (doc. # 30) at 21.  More importantly, the ALJ has acknowledged that her findings were based on her "careful consideration of the entire record."  Admin. R. at 18, 23.  Under these circumstances, it is speculative whether there would be any real value in more proceedings that would only subject Plaintiff's application for benefits to further unwarranted delay.  Finally, the Court disagrees with Defendant's characterization of the ALJ's errors as being merely factual in nature.  See Mot. (doc. # 30) at 21.  The preceding discussion outlines numerous errors that are both factual and legal in nature.  As the Smolen factors are satisfied, the matter will therefore be remanded for immediate payment of benefits.

**IV.    CONCLUSION**

In light of the foregoing analysis,

1     IT IS ORDERED that Plaintiff's motion for summary judgment

2  (doc. # 25) is GRANTED.

3     IT IS FURTHER ORDERED that Defendant's cross-motion for

4  summary judgment (doc. # 30) is DENIED.

5     IT IS FURTHER ORDERED remanding this matter to the Social

6  Security Administration for payment of benefits, using a disability

7  onset date of September 25, 2001.

8     IT IS FINALLY ORDERED directing the Clerk of the Court to

9  enter judgment in favor of Plaintiff and terminate this case.

10     DATED this 27th day of March, 2007.

11

12

13  _____

14         Robert C. Broomfield
        Senior United States District Judge

15

16

17

18  Copies to counsel of record

19

20

21

22

23

24

25

26

27

28